UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――

BERNADETTE CAPPA,

**REPORT AND
RECOMMENDATION**

Plaintiff,

09-CV-583
(FJS/VEB)

V.

MICHAEL ASTRUE,
Commissioner of Social Security,

Defendant.
―――――――――――――――――――――――――

## I. INTRODUCTION

In June of 1999, Plaintiff Bernadette Cappa filed an application for disability

insurance benefits ("DIB") under the Social Security Act.  Plaintiff alleges that she has been

unable to work since January 28, 1998, due to physical and mental impairments.  The

Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorneys, Olinsky & Shurtliff, Jaya Shurtliff, Esq., of

counsel, commenced this action on May 19, 2009, by filing a Complaint in the United States

District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial

review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this

case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. §

636(b)(1)(A) and (B). (Docket No. 18).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for DIB on June 20, 1999, alleging disability beginning on October 10, 1995. (T at 105).[1]  Thereafter, Plaintiff amended her alleged onset date to January 28, 1998. (T at 30).  The application was denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on July 18, 2000, in Syracuse, New York before ALJ Joseph D. Medicis, Jr. (T at 27).  Plaintiff appeared with an attorney and testified. (T at 30-62). On October 24, 2000, ALJ Medicis issued a written decision denying Plaintiff's application. (T at 16-21).  Plaintiff requested review by the Appeals Council.  In August of 2001, while the request for review was pending, Plaintiff filed a second application for benefits, alleging an onset date of October 25, 2000, the day after the ALJ's decision.  This application was granted at the initial level and Plaintiff was awarded benefits effective October 25, 2000. (T at 366).

On November 20, 2003, the Appeals Council denied Plaintiff's request for review of the ALJ's October 24, 2000 decision. (T at 6-10).  Plaintiff commenced an action *pro se* in the United States District Court for the Northern District of New York on January 13, 2004. (Docket No. 1 in Case # 04-CV-47).   On March 2, 2005, the Honorable Gustave J. DiBianco, United States Magistrate Judge, issued a Report and Recommendation, in which he recommended that Plaintiff's case be remanded for further administrative proceedings. (Docket No. 19 in Case # 04-CV-47, included in Administrative Transcript at T. 343-360).  On September 7, 2005, the Honorable Lawrence E. Kahn, United States District Judge, entered a Decision and Order adopting the Report and Recommendation over the

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

Commissioner's objection. (Docket No. 24 in Case # 04-CV-47, included in Administrative Transcript at T. 361-62).

On March 31, 2006, the Appeals Council, acting in accordance with Judge Kahn's directive, vacated the ALJ's October 24, 2000 decision and remanded the case to the ALJ for further proceedings. (T at 366-67). A second hearing was held on October 4, 2006, before ALJ Medicis. (T at 588). Plaintiff appeared *pro se* and requested an adjournment so she could obtain a lawyer. The ALJ granted the request. (T at 590-599). A third hearing was held on December 6, 2006. Plaintiff appeared with counsel and testified. (T at 601-627).

On March 29, 2007, ALJ Medicis issued a decision denying Plaintiff's application. (T at 330-35). The ALJ's March 2007 decision became the Commissioner's final decision on April 16, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 315-18).

Plaintiff, through counsel, timely commenced this action on May 19, 2009. (Docket No. 1). The Commissioner interposed an Answer on December 14, 2009. (Docket No. 9). Plaintiff filed a supporting Brief on February 18, 2010. (Docket No. 12). The Commissioner filed a Brief in opposition on May 14, 2010. (Docket No. 17).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

motion be denied, Plaintiff's motion be granted, and this case be remanded for further administrative proceedings.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

4

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Review of Prior Decisions**

To understand the arguments advanced by the parties, it is necessary to first review the findings and decisions rendered by the ALJ, the Appeals Council, and the federal judges assigned to an earlier case filed by the Plaintiff *pro se*.

**a.    ALJ's October 24, 2000 Decision & Appeals Council Order**

On October 24, 2000, ALJ Medicis issues a decision denying Plaintiff's application for benefits. (T at 16-21).  In that decision, the ALJ made the following findings: Plaintiff met the insured status requirements under the Social Security Act through the date of the decision. Plaintiff had not engaged in any work activity since the alleged onset date. Plaintiff had degenerative changes of the lumbosacral spine, an impairment considered "severe" under the Act. (T at 20).

However, the ALJ concluded that Plaintiff did not have an impairment or combination

6

of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 20).  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work. (T at 20).

The ALJ determined that Plaintiff could not perform her past relevant work as a licensed practical nurse because that work involved lifting more than 20 pounds at a time, which was precluded by Plaintiff's RFC. (T at 19).  Considering Plaintiff's age (54), education (high school), work experience (skilled, but with non-transferrable skills), and RFC (light work), the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T at 20-21).

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined under the Social Security Act, from January 28, 1998, the alleged onset date, to October 24, 2000, the date of the ALJ's decision. (T at 21).

On November 20, 2003, the Appeals Council denied Plaintiff's request for review of the ALJ's October 24, 2000 decision. (T at 6-10). In its Order, the Appeals Council recognized that on September 10, 2001, while the request for review of the ALJ's decision was pending, Plaintiff was awarded benefits pursuant to an application filed on August 7, 2001. (T at 7).  The award of benefits was based upon a determination that Plaintiff was disabled as of October 25, 2000, *i.e.* one day after ALJ Medicis's decision.  (T at 7).

The Appeals Council noted that its November 2003 Order had no impact on the subsequent award of benefits and only applied to Plaintiff's appeal of ALJ Medicis' October 24, 2000 decision. (T at 7).  The Appeals Council explained that it had considered correspondence from Plaintiff's counsel in support of the request for review, along with

"Material associated with the New York Disability Determinations' [*sic*] September 10, 2001 determination," but concluded that this information did not provide a basis for changing ALJ Medicis's October 25, 2000 decision (T at 7, 10).

### b.    Report & Recommendation and District Court Order

Plaintiff commenced a *pro se* action on January 13, 2004, challenging the Commissioner's denial of benefits.  On March 2, 2005, United States Magistrate Judge Gustave J. DiBianco issued a Report & Recommendation finding that the case should be remanded for further proceedings.  ("R&R" - Docket No. 19, in case number 04-CV-47, included in the administrative record T at  343-360).

Although he ultimately recommended remand, Judge DiBianco found sufficient support for several aspects of the ALJ's October 2000 decision.  For example, Judge DiBianco concluded that the ALJ was "correct in finding that the plaintiff's [depression] did not further limit the full range of her exertional capabilities." (R&R, at p. 8-9).  In addition, Judge DiBianco found that the ALJ properly considered evidence from Dr. Finkenstadt, one of Plaintiff's treating physicians, and properly discounted an assessment from Plaintiff's treating chiropractor. (R&R, at p. 9-10).  Judge DiBianco also noted several independent medical examinations by various orthopedic physicians, which were supportive of the ALJ's assessment that Plaintiff retained the RFC to perform light work. (R&R, at p. 11).

However, notwithstanding his finding that "the evidence before the ALJ support[ed] his conclusion that plaintiff can perform light work," Judge DiBianco found that a remand was required.  Pointing to letter briefs submitted by Plaintiff's former counsel to the Appeals Council, Judge DiBianco noted that significant evidence was apparently provided to the Appeals Council, but not included in the administrative record filed in connection with the

8

federal court case. (R&R, at 15-16).  For example, a letter brief from Plaintiff's former counsel refers to a February 2001 diagnosis of bipolar disorder rendered by Dr. Jane Kou and a July 2000 report from Dr. Bruce Frederickson.  Judge DiBianco noted that these documents were apparently among the "Material associated with the New York Disability Determinations' [*sic*] September 10, 2001 determination" considered by the Appeals Council in connection with its November 2003 Order, but these "materials" were not included as part of the record before the Court. (R&R, at p. 15-17).

As such, Judge DiBianco found that the record was "incomplete" and that he could not "determine whether the Appeals Council's finding that the new evidence would not change the ALJ's decision [was] supported by substantial evidence." (R&R, at p. 17).  In making this finding, Judge DiBianco noted the possibility that the new evidence submitted to the Appeals Council "was relevant *only* to the time period *after* the ALJ's decision and would therefore not change the ALJ's decision." (R&R, at p. 17)(emphasis original). However, "without the ability to see the material that was submitted to the Appeals Council," Judge DiBianco concluded that he had "no way of knowing whether the Appeals Council's finding was supported by substantial evidence . . . ." (R&R, at p. 17-18).  Accordingly, Judge DiBianco felt compelled to recommend a remand.

As noted above, United States District Judge Lawrence Kahn adopted Judge DiBianco's Report and Recommendation and the case was remanded to the Commissioner on September 7, 2005. (Docket No. 24, in case number 04-CV-47, included in administrative transcript at 361-62).

### c.    ALJ's March 2007 Decision & Appeals Council's Order

On remand, the Appeals Council referred the matter to ALJ Medicis, who conducted

9

a hearing and then rendered a decision, dated March 29, 2007, finding that Plaintiff was not disabled between January 28, 1998 (the alleged onset date) and October 24, 2000 (the date of his prior decision).  (T at 330-335).

ALJ Medicis noted that the issue was whether the evidence received by the Appeals Council subsequent to his October 24, 2000 decision "altered" that unfavorable decision. (T at 331).  In other words, the question presented was whether the additional medical evidence was relevant to the time period at issue (*i.e.* January 28, 1998-October 24, 2000) or whether it only related to Plaintiff's condition *after* that period. (T at 331).

ALJ Medicis then proceeded to consider the impact of the additional evidence and, in particular, its relationship to the relevant time period.  As discussed more fully below, the ALJ found that the additional evidence did not provide a basis for changing his earlier assessment that Plaintiff was not disabled between January 28, 1998 and October 24, 2000. (T at 333-335).

The Appeals Council denied Plaintiff's request for review of the ALJ's March 2007 decision in an Order issued on April 16, 2009.  The Appeals Council found that the ALJ's conclusion that the additional evidence did not provide a basis for changing his prior findings was supported by substantial evidence. (T at 316).  Specifically, the Appeals Council held that the "additional medical evidence from the time period at issue does not indicate significant changes in your conditions, treatment or additional severe impairments that would warrant different findings." (T at 316).

In addition, the Appeals Council noted that the State Agency decision granting Plaintiff's subsequent application for disability was *not* based upon a finding that Plaintiff's RFC was more restricted than ALJ Medicis determined in his October 2000 decision. (T at

316).  In fact, according to the Appeals Council, the State Agency, like the ALJ, found that Plaintiff retained the RFC to perform light work. (T at 316).  However, the State Agency found that Plaintiff was disabled based upon the application of Medical Vocational Rule 202.06.  That rule requires a finding of disability when the claimant is 55 years old (or older) and is limited to light work.  In this case, because Plaintiff turned 55 on August 29, 2001, the Rule required a finding of disability as of that date.  (T at 316).  However, that Rule was not applicable to the time period at issue with respect to the ALJ's October 2000 decision.  According to the Appeals Council, because Plaintiff was 54 at the time of the October 2000 decision, a different rule (Rule 202.14) applied and a finding of disability was not required. (T at 316).[4]

As such, the Appeals Council found no reason to overturn the ALJ's March 2007 decision and denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T at 316).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  She offers four (4) principal arguments in support of that position.  First, Plaintiff contends that the ALJ did not provide a full and fair *de novo* hearing on remand.  Second, Plaintiff argues that the ALJ erred by finding that her psychological impairments were non-severe.  Third, Plaintiff asserts that the newly submitted evidence should have caused the ALJ to revisit his

---

[4]The Appeals Council noted a discrepancy in the State Agency's findings with regard to this issue. If the State Agency's determination was based upon Medical-Vocational Rule 202.06, then Plaintiff should have been awarded benefits as of August 29, 2001, her 55th birthday.  Instead, she was apparently awarded benefits as of October 25, 2000, the day after ALJ Medicis's first decision.  The Appeals Council noted this discrepancy, but declined to address it because the State Agency's determination was not before the Council for review. (T at 316).

findings concerning her knee and back impairments.  Fourth, Plaintiff challenges the ALJ's credibility assessment.  This Court will address each argument in turn.

### a.    Failure to Provide *De Novo* Hearing

On remand from the District Court, the Appeals Council remitted the matter to ALJ Medicis for further proceedings.  Specifically, the Appeals Council, in an Order dated March 31, 2006, directed the ALJ to "offer the claimant the opportunity for a hearing,"  "address all of the evidence in both records including all of the new evidence entered into the record," "take any further action needed to complete the administrative record," and "issue a new decision on the issue of disability for the period prior to October 25, 2000." (T at 367). As noted above, the ALJ thereafter conducted a hearing and, in March of 2007, rendered a decision finding that the new evidence did not provide a basis for changing the conclusions reached in his October 2000 decision. (T at 333-35).

Describing the ALJ's March 2007 decision as "perfunctory," Plaintiff argues that the ALJ did not abide by the Appeals Council's remand order because he did not complete the full sequential evaluation process, but limited his focus to the question of whether the new evidence provided a basis for changing his prior decision.  According to Plaintiff, this focus on the new evidence in isolation was a violation of the Appeal Council's mandate that the ALJ consider "all the evidence."  In other words, Plaintiff argues that the ALJ should have issued an entirely new decision, with (for example) detailed severity and RFC findings based upon all of the evidence, as opposed to simply referencing his earlier findings and explaining that the new evidence did not provide a basis for changing those findings.

This Court finds Plaintiff's argument unpersuasive.  First, the ALJ made specific reference to his prior decision and outlined the findings in that earlier decision. (T at 332).

12

The ALJ did not recite all of the medical evidence supporting his prior decision not because he gave that evidence no consideration in reaching his new decision, but rather to avoid "being redundant regarding the facts of the case and the evidence relied upon" in his October 2000 decision. (T at 332). In other words, the ALJ's decision makes clear that he considered all of the evidence (both "new" and "old") in reaching the conclusion that the new evidence did not provide a basis for revising his earlier findings. This Court finds no error with regard to that procedure, which was fully consistent with the directives of Judge DiBianco and the Appeals Council. The ALJ addressed the fundamental question identified by Magistrate Judge DiBianco and the Appeals Council, namely, whether the "new evidence" provided a basis for revisiting the October 2000 decision. (T at 333-34).

Second, the Appeals Council, which was in the best position to determine whether its own remand order was followed, determined that the ALJ adequately reviewed the evidence and that the ALJ's reference to the findings from his October 2000 decision was adequate. (T at 315).

Third, any arguable error committed by the ALJ in not explicitly setting forth a new sequential evaluation including the new evidence was harmless. There is no reason to believe the ALJ (or the Appeals Council) would have reached a different conclusion had the outline of the ALJ's decision been in the format desired by the Plaintiff. Accordingly, this Court finds that this particular argument does not provide a basis for remand.

### b.    Severity of Psychological Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following

are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). The Second Circuit has held that the step two severity analysis is limited to "screen[ing] out de minimis claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995). A "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In his October 2000 decision, the ALJ concluded that Plaintiff's depressive disorder was a "medically determinable impairment," but found that the impairment was not "severe" at step two. (T at 20). In support of this finding, the ALJ cited the following evidence: Dr. Kristin Barry, a psychiatric consultative examiner, concluded that Plaintiff's attention, concentration, recent memory, and remote memory were "mildly impaired due to her emotionality." (T at 209). A non-examining State Agency Review consultant opined that Plaintiff's mental impairment imposed no restrictions on her activities of daily living, caused no difficulties in maintaining social functioning, and resulted in no deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner

in work settings or elsewhere. (T at 232).  This conclusion was "accepted by" the ALJ because he found no "well supported contrary opinion." (T at 19).

In addition, the ALJ made the following findings concerning Plaintiff's claims of severely disabling depression:

> [T]he lack of any psychiatric treatment leads the undersigned to dismiss the claimant's complaints of severely disabling depression.  While [t]he claimant's family physician has prescribed Paxil for the claimant, she is not receiving any ongoing counseling or therapy.  The claimant's allegation of concentration difficulties due to depression also seems to be inconsistent with her testimony that she reads extensively and does crossword puzzles.

(T at 19).

As part of the new evidence submitted to the Appeals Council, Plaintiff provided additional medical records from Dr. Humphrey, her treating physician.  In an April 2000 progress note, Dr. Humphrey indicated that Plaintiff complained of "severe anxiety accompanied by depression." (T at 427) (emphasis omitted).  The doctor prescribed Paxil and recommended that Plaintiff seek psychiatric counseling. (T at 427).  In a July 2000 note, Dr. Humphrey reported that Plaintiff's depression was "essentially stable," although Plaintiff continued to experience frequent crying, angry outbursts, difficulty sleeping, and occasional suicidal ideation. (T at 260).  Dr. Humphrey noted that Plaintiff recognized the need for counseling, "but just has not done so because of insurance concerns." (T at 260).  In a November 2000 note, Dr. Humphrey indicated that Plaintiff's anxiety had been improved with Paxil use, but her depression remained. (T at 430).

The new evidence also included treatment notes from Dr. Jane Kou, a treating psychiatrist.  These notes, which post-dated the ALJ's October 2000 decision, indicated a

diagnosis of bipolar disorder (T at 446) and "mild to moderate depression." (T at 494).

On remand, the ALJ indicated that he had considered this new evidence, but found that it only addressed "routine medical care" and did not provide a basis for revisiting his earlier conclusion that Plaintiff's mental impairment was non-severe. (T at 333).  While acknowledging that Dr. Humphrey's notes "raise[d] the issue of the claimant having some anxiety," the ALJ found "no substantive or material clinical and/or diagnostic findings that would alter the decision reached [on] October 24, 2000." (T at 333).  The ALJ indicated that Dr. Kou's records did not "alter" his prior decision with regard to Plaintiff's mental health at any time prior to the October 2000 decision. (T at 334).

For the following reasons, this Court finds that the ALJ's decision is not supported by substantial evidence.  First, the ALJ's initial conclusion that Plaintiff's depression was non-severe (*i.e.* imposed no more than a minimal impact on her ability to perform work-related activities) was based primarily upon the fact that Plaintiff had not sought psychiatric treatment as of the date of the ALJ's decision.  (T at 19).   In his Report and Recommendation, Judge DiBianco wrote approvingly of this aspect of the ALJ's decision, citing primarily the fact that Plaintiff was "not being treated for her depressive disorder, other than the prescription for Paxil" as the key piece of evidence supporting the ALJ's finding at step two of the sequential evaluation process. (Docket No. 19, in case number 04-CV-47, at p. 8).

The additional evidence provided a reason to revisit the ALJ's decision to discount Plaintiff's allegations of disabling depression. As discussed above, the new evidence contained a treatment note from Dr. Humphrey to the effect that Plaintiff had not sought psychiatric counseling due to financial concerns and that she continued to experience

16

significant (albeit stable) psychiatric symptoms even while being treating with a prescription anti-depressant. (T at 260).

SSR 96-7p provides, in pertinent part, that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed." Under that ruling, however, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id.

In this case, the ALJ did not seek an explanation for Plaintiff's failure to seek treatment before rendering his October 2000 decision discounting her complaints.  Even if this error can be excused, the ALJ's subsequent finding that the additional evidence provided no basis for revisiting that decision cannot be sustained.  At that point, the ALJ had evidence in the form of a treatment note from Plaintiff's treating doctor indicating that Plaintiff had not sought psychiatric treatment because of financial concerns, not because her symptoms were non-severe.  The ALJ was surely required to consider this explanation and determine whether it provided a basis for reviewing his earlier decision, particularly because the failure to seek treatment played such a significant role in the ALJ's step two determination.

The ALJ's decision to discount Plaintiff's allegations based upon the lack of treatment rests upon the following logic - there was no legitimate reason for Plaintiff not to seek psychiatric treatment and, as such, her failure to seek treatment demonstrates that her symptoms were non-severe.  This logic cannot be reconciled with the medical record,

as it was originally presented to the ALJ or (particularly) as supplemented and re-presented to the ALJ on remand.  An apparent justification for Plaintiff's failure to seek treatment (namely, concern the counseling would not be covered by insurance) was provided in Dr. Humphrey's notes. (T at 260).[5]  In addition, the suggestion that Plaintiff's psychiatric symptoms were non-severe is simply not supported by the medical record, which contained assessments and reports indicating that Plaintiff's mental impairment imposed much more than a *de minimis* impact on her ability to perform basic work activities.

For example, Dr. Barry, the consultative examiner, concluded that Plaintiff had "some difficulty maintaining attention and concentration . . . because of her psychiatric symptomatology." (T at 210).  Dr. Barry opined that Plaintiff had "difficulty appropriately dealing with job stressors" and "some difficulty making appropriate job related decisions and being consistent in job performance." (T at 210).  Dr. Barry found Plaintiff's allegations of depressive symptoms and anxiety consistent with the examination results, characterized Plaintiff's prognosis as "poor," and "highly recommended" that Plaintiff seek treatment. (T at 210).  Lastly, Dr. Barry assessed that Plaintiff appeared "to be exhibiting a *significant amount* of depressive symptomatology." (T at 210)(emphasis added).  The ALJ made no effort to reconcile Dr. Barry's assessment with his initial conclusion that Plaintiff's depressive symptoms were *de minimis* or with his subsequent decision finding no reason to revisit his initial findings.

In addition, medical records from Dr. Humphrey, Plaintiff's treating physician,

---

[5]It should also be noted that Plaintiff testified at the July 2000 hearing that she was "having a hard time" obtaining psychiatric treatment because her "insurance does not cover that." (T at 41).  Plaintiff explained that she was looking for a facility with "a sliding scale in order to pay for therapy." (T at 41).  The ALJ did not address this explanation in either of his decisions.

documented complaints of "severe anxiety accompanied by depression." (T at 427) (emphasis omitted) and significant depressive symptoms (including suicidal ideation) that persisted even while Plaintiff was treated with a prescription anti-depressant. (T at 260). Dr. Humphrey also recommended that Plaintiff seek psychiatric treatment.  (T at 260, 427).

Lastly, although some of Dr. Humphrey's records and all of Dr. Kuo's records post-date the ALJ's October 2000 decision, this was not a basis for rejecting them summarily, as the ALJ did in his decision on remand. (T at 334). It is well-settled that "medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing." Newbury v. Astrue, 321 Fed.Appx. 16, 2009 WL 780888, at *2 n.2 (2d Cir. Mar. 26, 2009)(citing Pollard v. Halter, 377 F.3d 183, 193 (2d Cir.2004)).  The categorical refusal to consider evidence solely because it was created after the date of the ALJ's decision is error. Pollard, 377 F.3d at 193 ("Although the new evidence consists of documents generated after the ALJ rendered his decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of [the Claimant's] claims. To the contrary, the evidence directly supports many of her earlier contentions regarding [the] condition. It strongly suggests that, during the relevant time period, [her] condition was far more serious than previously thought"); see also Sergenton v. Barnhart, 470 F. Supp.2d 194, 204 (E.D.N.Y. 2007).

Accordingly, this Court finds that a remand is necessary for reconsideration of the severity of Plaintiff's psychological impairments.  On remand, the ALJ should address (and, if necessary, further develop the record concerning) Plaintiff's explanation for failing to seek psychiatric treatment during the relevant time period.  In addition, the ALJ should consider whether his step two finding can be reconciled with the medical record, including (in

particular) Dr. Barry's assessment of significant depressive symptomology  Lastly, a retrospective diagnosis from Dr. Kuo (Plaintiff's treating psychiatrist during the time period shortly after the date of the ALJ's original decision) concerning the nature and extent of Plaintiff's limitations during the time period at issue would be helpful (although, given the passage of time, this may be difficult to obtain).

### c.    Evidence Concerning Physical Impairments

In his October 2000 decision, the ALJ concluded that Plaintiff's complaints of knee pain were not well supported by objective findings. (T at 18).  He also found that Plaintiff's allegations of constant disabling back pain were inconsistent with the treatment she sought and received. (T at 19).

Among the additional evidence provided to the Appeals Council and eventually considered on remand was a July 2000 treatment note from Dr. Bruce Frederickson, a treating physician.  Dr. Frederickson reported that Plaintiff's back symptoms were "much the same" and that Plaintiff "really doesn't want to go any further with treatment . . . ." (T at 448).  Dr. Frederickson referenced problems with "grading crepitus" in both knees and indicated that physical therapy instruction in "knee rehab exercise" was warranted. (T at 448).

On remand, the ALJ found that this "additional evidence was not persuasive in demonstrating an increase in the claimant's symptomatology not previously considered nor were there any substantive clinical and/or diagnostic findings in this one page report such that it would alter the decision issued October 24, 2000." (T at 334).

Plaintiff argues that Dr. Frederickson's report should have caused the ALJ to revisit his earlier findings concerning her physical limitations.  This Court finds the ALJ's decision

supported by substantial evidence.  The record contains assessments from Dr. Finkenstadt, a treating provider, to the effect that Plaintiff had only a moderate partial disability and could return to work. (T at 173, 175).  Dr. Shayevitz, a consultative examiner, noted no neurological deficits and found Plaintiff's degree of back discomfort "somewhat questionable." (T at 203, 204).  Clinical and other testing was also found to be inconsistent with Plaintiff's allegations of disabling back and knee pain. (T at 18, 199-200, 239).  An August 2000 report from Dr. Humphrey described Plaintiff's response to treatment and prognosis as "good." (T at 275).

Although the July 2000 treatment note from Dr. Frederickson arguably provided some new, limited information regarding the nature of Plaintiff's knee and back pain, it did not undermine the ALJ's overall assessment regarding those conditions.  The note also did not reference any new diagnostic testing or clinical findings.  In sum, the ALJ's assessment was supported by substantial evidence in the first instance and the information contained in Dr. Frederickson's treatment note, when considered in light of the evidence as a whole, does not change that fact.  Accordingly, this Court does not find any basis for remand with regard to this issue.

### d.    Credibility Assessment

The claimant's credibility is an important element in Social Security disability claims, and such evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). If an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of

disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's credibility, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication

> [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
>
> 5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
>
> 6.   Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
>
> 7.   Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that her depression causes her difficulties with respect to concentration and decision-making, combined with irritability, sadness, and hopelessness. (T at 54).  As discussed above, the ALJ discounted these complaints primarily because Plaintiff had not sought psychiatric treatment. (T at 19)("[T]he lack of psychiatric treatment *leads the undersigned to* dismiss the claimant's complaints of severely disabling depression")(emphasis added).  However, this finding was not supported by substantial evidence and was not rendered in accord with applicable law.

As outlined above, the ALJ did not adequately consider Plaintiff's explanation for not seeking treatment or develop the record in that regard. Moreover, in explaining his decision to "dismiss" Plaintiff's complaints of severely disabling depression, the ALJ made no effort to reconcile his finding with the limitations assessed by Dr. Barry, the consultative examiner.  On remand, the ALJ also failed to reconcile his decision to stand by his earlier findings with the new evidence from Dr. Humphrey indicating that Plaintiff experienced

significant depressive symptoms even after treatment with a prescription anti-depressant.

On remand, the ALJ must revisit the question of Plaintiff's credibility after further development of the record and with consideration to the issues identified above.

**3.    Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is respectfully recommended that this case be remanded for further proceedings consistent with this Report and Recommendation.

**IV. CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the Commissioner's motion be denied, the decision of the Commissioner be reversed, and this case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   June 29, 2011

Syracuse, New York

## V. ORDERS

Pursuant   to   28   USC   §636(b)(1),   it   is   hereby   ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the**

Clerk of this Court within fourteen (14) days after receipt of a copy of this Report &
Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b)
of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION
WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE
OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE
DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.
Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir.
1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C.
§636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY
Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to
consider arguments, case law and/or evidentiary material *which could have been, but were
not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc.
v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

June 29, 2011

Victor E. Bianchini
United States Magistrate Judge